***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The Plaintiff has shown good grounds to reconsider the evidence. Accordingly, the Full Commission affirms in part, and reverses in part, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the times of the alleged injuries giving rise to these claims, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. At such times, an employment relationship existed between Plaintiff and Employer-Defendant.
3. For each claim, Liberty Mutual Insurance Company was the carrier on the risk for Employer-Defendant.
4. For I.C. No. 897966, the Plaintiff's average weekly wage is to be determined, while the parties submitted a possible average weekly wage of $502.51.
5. For I.C. No. 994995, the Plaintiff's average weekly wage is to be determined, while the parties submitted a possible average weekly wage of $506.50.
6. For I.C. No. 197123, the Plaintiff's average weekly wage is to be determined, while the parties submitted a possible average weekly wage of $460.99.
7. For I.C. No. 897966, the Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment on or about November 21, 2007. (The Deputy Commissionerfound this date to be an error.)
8. For I.C. No. 994995, the Plaintiff contends that he sustained an injury by accident on or about March 5, 2008, with the exact date to be determined by the Industrial Commission, which Defendants deny.
9. For I.C. No. 197123, the Plaintiff contends that he sustained an injury by accident on or about November 6, 2008, with the exact date to be determined by the Industrial Commission, which Defendants deny.
 ***********
As set forth in the Pre-Trial Agreement the Commission addresses the following:
 ISSUES *Page 3 
1. Is Plaintiff's cervical condition causally related to his compensable injury by accident of November 26, 2007 (I.C. No. 897966)?
2. Was Plaintiff injured by accident while in the scope of his employment on or about March 5, 2008 (I.C. No. 994995)? If not, did Plaintiff sustain an aggravation of his injury of November 21, 2007?
3. Was Plaintiff injured by accident while in the scope of his employment on or about November 6, 2008 (I.C. No. 197123)?
4. What, if any, indemnity benefits is Plaintiff entitled to receive?
5. What, if any, additional medical treatment is Plaintiff entitled to receive?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the hearing date before the Deputy Commissioner, Plaintiff was twenty-two (22) years of age. Plaintiff graduated from high school in 2005. After high school, he enrolled at Beaufort Community College and took welding classes. He obtained a certificate for MIG welding.
2. Prior to Plaintiff's employment as a welder he worked as a painter. He was hired by Defendant-Employer in May 2006. Plaintiff was hired at $11.00 an hour to work as a welder for the chassis or body of trucks.
3. Plaintiff was moved to a different area after about seven months of employment. In this area he was responsible for building front ends and rear ends of truck bodies. He *Page 4 
assembled front end frames, installed lights and wiring harnesses. In this job, Plaintiff lifted parts weighing up to 30 pounds, such as the wire harness cover.
4. On or about November 21, 2007, Plaintiff was moved to an area to work on the mid-section of the trucks, welding the truck bodies. The truck bodies would be lifted by a chain hoist.
5. First accident (I.C. No. 897966).
On November 26, 2007, while Plaintiff was working in the course and scope of his employment, an auto part, described as a "middle section", weighing approximately one hundred fifty (150) pounds, came loose from its support chains and fell, striking Plaintiff on the neck and left shoulder region, and knocking Plaintiff to his knees. The accident was witnessed by Mr. Earl Freeman, who was working alongside Plaintiff.
6. Plaintiff reported the accident to his supervisor, Mr. Preston Albrighten. Plaintiff was not sent for and did not seek immediate medical attention, but finished his shift that day. The accident of November 26, 2007, was accepted by the Defendants as a compensable injury by accident.
7. On December 3, 2007, Plaintiff presented to Dennis Czuchra, a physicians' assistant (P.A.) who works with Carolina East Medical Associates, Plaintiff's family practice. Plaintiff has been a patient of this practice since his early teenage years. Plaintiff complained of increasing pain in his neck and shoulder, after being struck by the truck body part. P.A. Czuchra assessed a contusion of the left shoulder region, prescribed icepacks, pain medicine, a sling, and placed Plaintiff on light duty, which was provided by the Employer.
8. Plaintiff was seen in follow-up by P.A. Czuchra. Due to Plaintiff's ongoing pain complaints in January 2008, P.A. Czuchra referred him to physical therapy. As of February 21, *Page 5 
2008, Plaintiff had completed his therapy and was released, having shown objective improvement. Plaintiff was released to return to regular duty.
9. Even though Plaintiff had been released from therapy, he continued to complain of pain. P.A. Czuchra ordered an MRI of the left shoulder. As reflected in the notes of Carolina East Medical Associates, this MRI was ordered and approved by the carrier as of February 28, 2008, prior to Plaintiff's second alleged accident, although it was actually taken after the second alleged accident. The MRI, performed on March 18, 2008, was negative for any injury. After reviewing the MRI report, P.A. Czuchra sent Plaintiff to orthopedic specialist Dr. George Miller, for further evaluation.
10. Second alleged accident (I.C. No. 994995). Prior to the March 18, 2008 MRI and prior to his examination by Dr. Miller, on March 5, 2008, Plaintiff was performing overhead lifting, one of his normal job duties. Plaintiff had performed this lifting requirement approximately four times per shift for approximately four months. On this date, Plaintiff experienced a "pop" in his left shoulder followed by a burning sensation.
11. Dr. George Miller examined Plaintiff on March 21, 2008, at which time Dr. Miller also reviewed the MRI results. Dr. Miller's examination showed that Plaintiff had normal strength in his left shoulder, but some mild limited motion, and Plaintiff's sensory examination was normal. Dr. Miller reinstated Plaintiff on light duty restrictions.
12. A one-page medical record from Dr. Birdsong of Birdsong Orthopaedic Clinic shows that Dr. Birdsong had released Plaintiff to return to work under light duty restrictions as of March 19, 2008. Per Plaintiff's testimony, Dr. Birdsong was treating him for a non-work-related fracture to his hand. The complete medical records of Dr. Birdsong are not in evidence for review. *Page 6 
13. As assessed by Dr. Miller, due to the accident of November 26, 2007, Plaintiff sustained a brachial plexus injury and possible neck sprain. The brachial plexus is the group of nerves coming from the cervical spine above the collar bone. The injury, a bruising and possible strain of the brachial plexus, was causing referred pain from Plaintiff's neck to his left shoulder. Although he found no neurological deficits on his examination, Dr. Miller referred Plaintiff to a neurologist, Dr. Kevin Good, for further testing. In the interim, Dr. Miller issued light duty restrictions for Plaintiff.
14. Neurologist Dr. Kevin Good examined Plaintiff on May 13, 2008. Plaintiff's neurological examination was normal. Dr. Good ordered additional testing, electromyography (EMG) and nerve conduction studies. These studies of Plaintiff's left upper extremity were all normal, as Dr. Good reported "without any evidence of a cervical radiculopathy, bracheal plexopathy, myopathy, polyneuropathy or mononeuropathy."
15. Per Dr. Good's testimony, when he examined Plaintiff almost six months after his November 2007 accident, Dr. Good found no nerve injury indicated at that time. It was Dr. Good's opinion that Plaintiff may have sustained a brachial plexus contusion, but there was no resulting nerve damage, or at least none apparent as of May 2008.
16. In late April or early May of 2008, Plaintiff engaged in a weight-lifting exercise at work for the purpose of becoming a member of the "Big Boyz Club." To become a member of this club Plaintiff was required to perform a biceps curl using a make-shift barbell that weighed approximately 133 pounds. Plaintiff performed this exercise successfully and exhibited no discernable change in behavior to witnesses of the feat.
17. Plaintiff's ability to lift this weight was inconsistent with his complaints of pain and weakness which he gave to the treating physicians and P.A. Czuchra. Plaintiff's complaints of *Page 7 
weakness were not measured objectively on examination by the treating physicians. Rather the treating medical professionals relied upon Plaintiff's subjective reports of weakness, which were contradicted by his behavior and his ability to curl 133 pounds.
18. On June 6, 2008, Dr. Miller referred Plaintiff for a functional capacity evaluation (FCE). The evaluation was scheduled for July 1, 2008, with Select Physical Therapy. The FCE was discontinued due to increasing pain complaints from Plaintiff, reported at the 10/10 level. The therapist concluded "Due to the self-limiting behavior, we cannot fully determine the client's physical abilities."
19. Defendants referred Plaintiff for an independent medical evaluation (IME) by Dr. David Dalsimer, an orthopedic surgeon, who has also worked with the Olympic weightlifting team. Dr. Dalsimer examined Plaintiff on August 28, 2008. Dr. Dalsimer diagnosed Plaintiff with a brachial plexus injury, consistent with Dr. Miller's assessment, as well as cervical nerve root injury, and pain syndrome in his left arm. Examining Plaintiff in August 2008, Dr. Dalsimer could not determine the extent of the injury sustained in November 2007.
20. Dr. Dalsimer did not specifically provide Plaintiff with any restrictions. He anticipated that at some point Plaintiff would return to full activities, and he recommended that Plaintiff use his left arm as much as possible. However, due to Plaintiff's pain syndrome, Dr. Dalsimer recommended pain management.
21. Dr. Dalsimer's assessment about the nature of Plaintiff's injury is consistent with the assessment of Dr. Miller. Based upon the testimony of these physicians, as well as Dr. Good, and P.A. Czuchra, it is found that the accident of November 26, 2007, caused a brachial plexus injury on Plaintiff's left side. Plaintiff sustained bruising to this area, which resulted in pain in his neck and referred pain to his left shoulder area. *Page 8 
22. By the time Plaintiff was assessed by Dr. Dalsimer in August 2008, any ligament injury was most likely healed. Despite his complaints at the time of Dr. Dalsimer's examination, Plaintiff was not experiencing a decrease in his strength. Plaintiff was continuing to experience what Dr. Dalsimer described as a pain syndrome.
23. As a result of the brachial plexus injury, Plaintiff may also have sustained some nerve injury, which takes longer to heal. According to Dr. Dalsimer, nerve injury may take one to three years to heal. Dr. Miller's testimony shows that an EMG may still be normal even with a brachial plexus injury. However, there was no obvious nerve injury as none was detectable on the tests administered by Dr. Good in May 2008. Dr. Good's testimony that there was no measureable permanent nerve injury is credible, persuasive, and supported by the medical evidence of record.
24. None of the physicians' testimony relates any injury to the alleged accident of March 5, 2008. No objective evidence of injury was found following this incident. The Full Commission finds by the greater weight of the credible evidence that the alleged incident on March 5, 2008, did not cause an injury to Plaintiff and did not result from Plaintiff's compensable left shoulder injury.
25. Plaintiff returned to work at full duty at some point following the IME by Dr. Dalsimer. Plaintiff then returned to Dr. Miller on October 3, 2008, he complained of increasing pain in his neck and left arm, following his return to full duty work. Dr. Miller noted that Plaintiff had not completed the functional capacity evaluation due to pain. Dr. Miller reinstated Plaintiff's restrictions of no lifting of greater than fifteen (15) pounds, with limited lifting using the left shoulder. Dr. Miller also referred Plaintiff to a pain clinic in Greenville. *Page 9 
26. Plaintiff was evaluated by Dr. Lynn Johnson with The Center for Pain Management at Pitt County Memorial Hospital on October 16, 2008. Dr. Johnson recommended a cervical MRI, which was done on October 28, 2008, at MRI of Eastern Carolina. As assessed by Dr. James S. Easterbrook, the MRI showed the cervical spinal cord of normal volume, contour, and signal intensity. There was a minimal C6-7 disk bulge with no evidence of a herniation, spinal stenosis, myelopathy, or nerve root impingement.
27. Plaintiff was to undergo a cervical epidural steroid injection by Dr. Minard with the Center for Pain Management at Pitt County Memorial Hospital. This injection was never approved by the workers' compensation carrier.
28. Third accident (I.C. No. 197123).
On November 6, 2008, Plaintiff was struck in the right shoulder and head by another part which fell after coming loose from the chain hoist. Plaintiff reported his injury and was excused from work to see P.A. Czuchra.
29. P.A. Czuchra ordered x-rays of Plaintiff's cervical spine. P.A. Czuchra's physical examination showed some reduced range of motion with pain, no better and no worse than Plaintiff's prior examinations. There was no objective sign of any contusion and the x-rays were negative for any fracture. The medical assessment of P.A. Czuchra was reasonably necessary given the nature of the accident.
30. P.A. Czuchra testified that he cannot state to any degree of certainty that the minimal disk bulge at C6-7, detected on the October 28, 2008 MRI, was caused by the accident of November 26, 2007. Likewise, none of the physicians who testified have given an opinion that this minimal disk bulge was related to the accident. It is therefore found that the evidence fails to establish any cervical disk injury was sustained on or about November 26, 2007. *Page 10 
31. Per the testimony of P.A. Czuchra, the physical therapy notes show that following his injury of November 2007, Plaintiff objectively improved. However, Plaintiff continued to manifest the same subjective complaints of pain, which could not be measured. When told about Plaintiff's curling of 133 pounds, P.A. Czuchra found this inconsistent with Plaintiff's continued pain complaints during his treatment.
32. On November 18, 2008, Dr. Miller signed a "Medical Absence Report" stating that his work restrictions of fifteen pounds lifting for Plaintiff would be "permanent." He reiterated this in a report dated December 29, 2008. Dr. Miller assessed Plaintiff with a ten percent permanent impairment (10% PPD) to the left arm and a seven percent permanent impairment (7% PPD) to the neck due to the November 26, 2007 accident.
33. Dr. Miller testified that the barbell lifting would not necessarily test the movements he restricted. Thus the permanent work restrictions, based primarily on Plaintiff's subjective complaints of pain, are deemed to be reliable.
34. Plaintiff went out of work on Family Medical Leave Act (FMLA) on or about November 20, 2008. Plaintiff did not return to work following the expiration of his FMLA and was subsequently terminated effective February 22, 2009, due to Defendant-Employer inability to accommodate Plaintiff's light duty restrictions.
35. Dr. Miller and Dr. Dalsimer have both recommended that Plaintiff be referred to a pain clinic.
36. The greater weight of the evidence establishes that Plaintiff has been unable to earn wages in any employment due to his injuries by accident and resulting permanent restrictions.
37. Plaintiff has received unemployment insurance benefits through the North Carolina Employment Security Commission (ESC) following his termination from Defendant-Employer. *Page 11 
Plaintiff is required to conduct a job search in order to remain eligible for those unemployment benefits. Plaintiff submitted written evidence of his job search that he has conducted pursuant to ESC policies. The Full Commission finds that the greater weight of the evidence establishes Plaintiff has engaged in a reasonable job search.
38. The greater weight of the evidence establishes that Plaintiff was terminated as a result of the permanent restrictions assigned as a result of his November 26, 2007 injury and November 6, 2008 injury. The Full Commission finds that Defendants have not met their burden to show Plaintiff was terminated for a reason that would subject a non-injured employee to termination.
39. Plaintiff has received both short-term disability payments and unemployment insurance while out of work due to his injuries. Defendants are entitled to a credit for those amounts paid to Plaintiff.
40. The Full Commission finds by the greater weight of the evidence that Plaintiff's average weekly wage for the period following November 20, 2008, is $460.99 per week which gives a compensation rate of $307.34 per week.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident to his neck and left shoulder on November 26, 2007, when a part weighing about 150 pounds struck him, causing a brachial plexus injury. N.C. Gen. Stat. § 97-2(6). *Page 12 
2. Defendants are responsible for and have paid medical benefits for such treatment reasonably necessary due to the injuries Plaintiff sustained in the accident of November 26, 2007. N.C. Gen. Stat. §§ 97-2(19), 97-25.
3. The March 5, 2008 incident at work Plaintiff described when he experienced a "pop" in his left shoulder while lifting a part overhead did not constitute an accident within the meaning of the Workers' Compensation Act. This occurred while Plaintiff was performing a normal part of his job routine and not as the result of any interruption of his work routine. Therefore, Plaintiff did not sustain an accident on March 5, 2008. N.C. Gen. Stat. § 97-2(6).
4. Plaintiff suffered a compensable injury by accident on November 6, 2008, when he was struck in the head and right shoulder by a part that came loose from the hoist chain. N.C. Gen. Stat. § 97-2(6).
5. Defendants are responsible for medical benefits for such treatment reasonably necessary due to the accident of November 5, 2008, including the assessment given by P.A. Czuchra, and any tests he ordered. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. The greater weight of the competent medical evidence is that Plaintiff is in need of referral to a pain clinic. Click v.Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980).
7. Plaintiff has presented sufficient evidence to support a conclusion that he is unable to earn wages in any employment or is otherwise disabled as defined by the Act. Plaintiff has presented evidence that his restrictions, as assigned by his attending medical providers, were accurate. Plaintiff has met his burden in showing that he is incapable because of injury to earn wages he was receiving at the time of his injury by accident as required by N.C. Gen. Stat. § 97-2(9). Russell v. Lowes ProductDistribution, 100 N.C. App. 762, 425 S.E.2d 454 (1993). *Page 13 
8. Plaintiff was terminated for reasons directly related to his compensable injury. Therefore Plaintiff has not been terminated for reasons unrelated to the compensable injury and the analysis underSeagraves does not apply. Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E. 2d 397 (1996).
9. Defendants are entitled to a credit for unemployment insurance payments received by Plaintiff as well as a credit for short-term disability payments made to Plaintiff through Defendant-Employer's short-term disability plan. N.C. Gen. Stat. §§ 97-42, 97-42.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee approved below and subject to credit for unemployment insurance benefits and short-term disability compensation, Defendants shall pay Plaintiff temporary total disability compensation at the rate of $307.34 per week, beginning November 20, 2008, and continuing until further order of the Commission.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to Plaintiff in paragraph one (1) above, is hereby approved to be deducted from the lump sums accrued and thereafter, every fourth (4th) payment due Plaintiff shall be paid directly to Plaintiff's attorney.
3. Defendants shall pay all medical expenses incurred or to be incurred by Plaintiff as a result of the compensable injuries for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, or may tend to lessen the employee's *Page 14 
period of disability, when bills for same have been submitted and approved by the Industrial Commission, including the assessment of P.A. Czuchra.
4. Defendants shall pay the costs.
This the 15th day of November, 2010.
 S/___________________ DANNY LEE McDONALD, COMMISSIONER
CONCURRING:
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/___________________ PAMELA T. YOUNG CHAIR *Page 1